AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Teal Samsung Galaxy Cell Phone<br>Model: Samsung Galaxy A06<br>Seized as FP& F: 2026255200004101 Item: 004 | )<br>)<br>) Case No. **2:25-mj-09029**<br>)<br>)<br>) |

**FILED**
Dec 31 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ ClaudiaCarranza   DEPUTY

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Karla Buenrostro incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Karla Buenrostro*
Applicant's signature

Border Patrol Agent Karla Buenrostro
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 12/30/25

*LR*
Judge's signature

City and state: El Centro, California    HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-3:</u>  Teal Samsung Galaxy Cell Phone
Model: Samsung Galaxy A06
Seized as FP& F: 2026255200004101 Item: 004
Seized from Amado Castillejos Serrano
**(Target Device #3)**



The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 13, 2025, up to and including November 14, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Karla Buenrostro, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Black Samsung Cell Phone
Model: Samsung Galaxy A14
Seized as FP& F:2026255200004101 Item: 002
Seized from Fernando Crus
**(Target Device #1)**

**A-2:**  Blue Samsung Galaxy Cell Phone
Model: Samsung Galaxy A06
Seized as FP& F: 2026255200004101 Item: 003
Seized from Jaime Guadalupe Munoz Amaro
**(Target Device #2)**

**A-3:**  Teal Samsung Galaxy Cell Phone
Model: Samsung Galaxy A06
Seized as FP& F: 2026255200004101 Item: 004
Seized from Amado Castillejos Serrano
**(Target Device #3)**

**A-4:**  Black Samsung Galaxy Cell Phone
Model: Samsung Galaxy S22
Seized as FP& F: 2026255200004101 Item: 005
Seized from Santos Hernandez
**(Target Device #4)**

**A-5:**  Blue Sky Cell Phone
Model: Elite P55 Max
Seized as FP& F: 2026255200004101 Item: 006
Seized from Santos Hernandez
**(Target Device #5)**

as further described in Attachments A-1 to A-5 and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.   The requested warrant relates to the investigation and prosecution of Fernando CRUS (CRUS) for transportation of illegal aliens Jaime Guadalupe Munoz Amaro, Amado Castillejos Serrano, and Santos Hernandez (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from CRUS and the Material Witnesses on or about November 13, 2025, incident to the arrest of CRUS and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.   Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.   I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since August 12, 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.   I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and

2

prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal

3

aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On November 13, 2025, Border Patrol Agents assigned to the El Centro Station (ELS) Disrupt Unit (DU) were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility (AOR). The BPAs were dressed in plain clothes and operating unmarked and marked service vehicles to blend in with the public and covertly search for criminal activity.

11. At approximately 6:25 a.m., Remote Video Surveillance System (RVSS) advised BPAs in the area that a sensor was activated near the International Boundary Fence (IBF), approximately 18 miles west of the Calexico Port of Entry. At approximately 6:30 a.m., the Mobile Surveillance Capabilities (MSC) advised BPAs in the area that they had visual of three suspected illegal Aliens (IAs) traveling north from the area. BPAs responded to the area and set up in the event the IAs would get picked up by a vehicle. RVSS maintained visual of the three IAs as they moved northbound through the desert area towards highway 98 east of Exit 6. RVSS relayed via radio to the BPAs that the three IAs were getting close to Highway 98 and once they reached the south side of Highway 98, all three IAs laid down.

12. At approximately 8:40 a.m., RVSS observed a white Chevrolet Tahoe come to a complete stop in the vicinity of the area where the three IAs were laid down. RVSS then observed the three IAs run towards the white Chevrolet Tahoe and entered the vehicle. BPA Cain responded by driving an unmarked Chevrolet Tahoe and activating his

5

emergency lights and sirens, signaling the white Chevrolet Tahoe to stop, but the Tahoe failed to yield. BPA Cain followed the white Tahoe for approximately one mile when SBPA Elizalde, driving a marked unit, activating his lights and sirens and took over the pursuit. The white Tahoe continued to drive east on Highway 98 without yielding and approximately four miles east of the initial pursuit, BPA Hunter deployed a Vehicle Immobilization Device (VID) but was unsuccessful. The white Chevrolet continued driving east bound for approximately 1 mile until the vehicle came to a complete stop.

13. All BPAs got out of their vehicles and identified themselves as BPAs to the individuals in the Tahoe. The driver, later identified as Fernando Crus (CRUS) and three other individuals were removed from the vehicle and detained. The three passengers were later identified as Amado CASTILLEJOS-Serrano (CASTILLEJOS), Jaime Guadalupe MUNOZ-Amaro (MUNOZ), and Albino HERNANDEZ-Santos (HERNANDEZ). Once detained, SBPA Elizalde asked CASTILLEJOS, MUNOZ, and HERNANDEZ as to their country of citizenship. CASTILLEJOS, MUNOZ, and HERNANDEZ stated they were citizens of Mexico and were in the country illegally. CRUS stated he is a U.S. citizen.

14. CRUS, CASTILLEJOS, MUNOZ, and HERNANDEZ was placed under arrest and all four individuals were transported to the El Centro Sector Border Patrol Station for further processing.

15. During a post-Miranda statement, CRUS stated he is a citizen of the United States. CRUS stated he was recently released from county jail after serving 14 months. CRUS stated he is homeless, unemployed and does odd jobs for money. CRUS stated the vehicle he was driving was not his but a friend's car and he is a member of a gang. CRUS stated that today he was on his way to Tijuana to visit his brother when he saw people walking on side of the road. CRUS stated they flagged him down and stated their car broke down and asked him for a ride to a gas station.

16. During post-Miranda statement, HERNANDEZ stated he is a citizen of Mexico. HERNANDEZ stated his destination was Los Angeles, California. HERNANDEZ stated he was previously deported in August of 2025 after being arrested in Chicago,

Illinois. HERNANDEZ stated he made arrangements to be smuggled into the United States via phone with an unknown female individual and he was to pay $10,000 USD to be smuggled to Los Angeles, California. HERNANDEZ stated that once he crossed illegally into the U.S., he and the other two individuals were guided via phone on where to go in the desert. HERNANDEZ stated they walked for approximately one and a half hours before reaching the road and he knew a white Tahoe would be picking them up. HERNANDEZ stated when the Tahoe stopped, he got in the front seat. HERNANDEZ stated the driver was on the phone talking to someone in Spanish who was directing him on where to take them next. HERNANDEZ stated he was scared because the driver was driving fast and there were no seatbelts for him to wear. HERNANDEZ stated that when Border Patrol got behind the driver to pull them over, the driver started to smash his phone and break it.

17. Record checks revealed HERNANDEZ was ordered removed from the United States by an Immigration Judge on August 25, 2015. HERNANDEZ was last removed from the United States to Mexico on August 08, 2025, through Alexandria, LA. There is no evidence showing HERNANDEZ has applied for and sought or received permission from the United States Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States after being previously removed.

18. During a post Miranda statement, Material Witness CASTILLEJOS stated he is a citizen of Mexico. CASTILLEJOS stated he made arrangements over the phone and he was to pay $11,000 USD to be smuggled into the U.S. CASTILLEJOS stated that his final destination was Mission Viejo, California. CASTILLEJOS stated he was being guided through his phone on where to go. CASTILLEJOS stated they walked north in the United States for approximately an hour and a half before reaching the road. CASTILLEJOS stated the guides told him a white Tahoe would be picking them up. CASTILLEJOS stated that a white Tahoe stopped in front of them and the driver told them to "get in". CASTILLEJOS stated the driver was using his phone and texting while driving. CASTILLEJOS stated that once Border Patrol units got behind the Tahoe, the driver stated, "They got us".

19.     During a Post Miranda statement, Material Witness MUNOZ stated he is a citizen of Mexico. MUNOZ stated he knew it was against the law to enter the United States illegally but said it was an easier opportunity than applying legally. MUNOZ stated a friend made arrangements for him to be smuggled into the U.S. and he was to pay $9,500 USD to be smuggled. MUNOZ stated his final destination was Richmond, California. MUNOZ stated once they crossed the border into the U.S., they were being guided by telephone on where to go. MUNOZ stated that another person in his group was the one in contact with the guides in Mexico via phone. MUNOZ stated that they walked north for approximately forty minutes before reaching the road. MUNOZ stated that a white vehicle was going to pick them up. MUNOZ stated that a white car pulled over and they got inside. MUNOZ stated there were no seatbelts in the car for him to wear. MUNOZ stated he did not speak to the driver and that the driver never spoke to him.

20.     During a search incident to the arrests of CRUS and the Material Witnesses, five phones were located. A Black Samsung cell phone was found in the center console of the vehicle (Target Device #1) and CRUS claimed ownership of the Target Device. One blue Samsung Galaxy cell phone was found on MUNOZ's person (Target Device #2) and MUNOZ claimed ownership of the Target Device. A teal Samsung Galaxy cell phone was found on CASTILLEJOS' person (Target Device #3) and CASTILLEJOS claimed ownership of the Target Device. One black Samsung Galaxy cell phone and one blue Sky cell phone were found in a small black bag that HERNANDEZ was holding (Target Devices #4 and #5) and HERNANDEZ claimed ownership of the Target Devices. All cell phones were seized as evidence.

21.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on

October 13, 2025, up to and including November 14, 2025, the day after the arrest of CRUS and the Material Witnesses.

## METHODOLOGY

22. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

25. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CRUS and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by the Material Witnesses and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Karla Buenrostro*
Karla Buenrostro, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of December 2025.

_____  11:33 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-1:   Black Samsung Cell Phone
Model: Samsung Galaxy A14
Seized as FP& F:2026255200004101 Item: 002
Seized from Fernando Crus
**(Target Device #1)**




The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**    Blue Samsung Galaxy Cell Phone
Model: Samsung Galaxy A06
Seized as FP& F: 2026255200004101 Item: 003
Seized from Jaime Guadalupe Munoz Amaro
**(Target Device #2)**




The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**   Teal Samsung Galaxy Cell Phone
Model: Samsung Galaxy A06
Seized as FP& F: 2026255200004101 Item: 004
Seized from Amado Castillejos Serrano
**(Target Device #3)**



The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**   Black Samsung Galaxy Cell Phone
Model: Samsung Galaxy S22
Seized as FP& F: 2026255200004101 Item: 005
Seized from Santos Hernandez
**(Target Device #4)**




The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>A-5:</u>	Blue Sky Cell Phone
Model: Elite P55 Max
Seized as FP& F: 2026255200004101 Item: 006
Seized from Santos Hernandez
**(Target Device #5)**




The **Target Devices** are currently in possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 13, 2025, up to and including November 14, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.